UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ERIC RICO,

        Plaintiff,

v.                                                                 Civ. No. 12-00038 MV/WPL

XCEL ENERGY, INC.,
and SOUTHWESTERN PUBLIC
SERVICE COMPANY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss First Amended Complaint [Doc. 6]. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the Motion is well-taken in part and will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

For purposes of this motion, the Court accepts as true the facts as alleged in the First Amended Complaint (the "Complaint"). Plaintiff has been an employee of Southwestern Public Service Company ("Southwestern") since 1999. Doc. 4, ¶ 7. In or about January of 2009, he suffered a work injury, which required him to undergo back surgery. *Id.* at ¶ 8. After his surgery, in or about February or March of 2010, his physician released him to resume employment with "modest lifting restrictions" and "no utility pole climbing." *Id.* at ¶ 8. At that time, he was working as a "third year apprentice lineman." *Id.* at ¶ 7.

In or about March or April of 2010, Plaintiff requested a transfer to a job for which he was

1

qualified, and for which he would not be required to climb utility poles or lift more than sixty pounds.  *Id.* at ¶ 11.  Defendants refused this request, and instead recommended that Plaintiff apply for long-term disability benefits, terminated his employment, and required him to apply for an open position, in competition with other job applicants.  *Id.* at ¶¶ 12-13.  Plaintiff notified his union of Southwestern's actions; the union declined to initiate a grievance procedure.  *Id.* at ¶ 26.

Thereafter, Southwestern offered Plaintiff a job as a "substation electrician," at a lower rate of pay than he had been earning in his previous position.  *Id.* at ¶ 14.  Southwestern also eliminated Plaintiff's three years of seniority as a third year apprentice lineman.  *Id.*  Plaintiff accepted the employment offer, and has held the substation electrician position since June 1, 2011.  *Id.*

On January 19, 2012, Plaintiff filed his First Amended Complaint for Damages Arising from Violation of Americans with Disabilities Act against Southwestern and Xcel Energy, Inc. ("Xcel").  Doc. 4.  The Complaint alleges a claim under the Americans with Disabilities Act ("ADA") (Count I), a claim under the New Mexico Human Rights Act ("NMHRA") (Count II), and a breach of contract claim (Count III).  On February 15, 2012, Defendants filed the instant motion to dismiss Defendant Xcel from this lawsuit, and to dismiss all three counts of the Complaint as to both Defendants.  Doc. 6.  Plaintiff filed a response on February 29, 2012.  Doc. 12.  In his response, Plaintiff agrees to dismissal of Xcel as a defendant in this lawsuit, but opposes Defendants' motion to dismiss his claims against Southwestern.  Defendants' reply followed on March 16, 2012.  Doc. 15.

## LEGAL STANDARD ON RULE 12(B)(6) MOTION TO DISMISS

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, while the Court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950.

## DISCUSSION

I.  ADA Claim

The ADA prohibits employment discrimination against "a qualified individual on the basis of disability" with regard to "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment" on the basis of such disability. 42 U.S.C. § 12112(a). The term "discriminate" includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer demonstrates that such accommodations would impose an "undue hardship"

on the operation of their business.   42 U.S.C. § 12112(b)(5)(A).

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must allege that: "(1) he is a 'disabled' person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against him because of the disability."   *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1109 (10th Cir. 1999).   In Count I of the Complaint, Plaintiff alleges that Defendants' refusal to reasonably accommodate his disability by allowing him to transfer to a position that does not require heavy lifting constitutes a violation of the ADA.   Defendants argue that Count I fails to state a claim under the ADA because it is devoid of facts that, if proven, would establish that Plaintiff is disabled.

For purposes of the ADA, an individual is disabled if he: (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment."   42 U.S.C. § 12102(1).   Plaintiff argues that his back injury is an impairment that substantially limits his ability to lift, and that he thus has adequately alleged a disability under the ADA.   Defendants counter that the allegations of Plaintiff's impairment are insufficient to allege a disability under the ADA, because limitations on heavy lifting and climbing are not, as a matter of law, "substantial limitations" of major life activities.

"Ultimately, whether an individual is substantially limited as to a major life activity is a question of fact."   *Mills v. Temple Univ.*, __ F. Supp. 2d __, 2012 WL 1122888, *7 (E.D. Pa. 2012.   Before Congress amended the ADA in 2008, courts construed the Act strictly, finding that an individual was "substantially limited" only if he had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily

4

lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002). In another leading ADA case, the Supreme Court held that the degree of limitation caused by an individual's impairment should be determined with reference to the ameliorative effects of mitigating measures. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 499 (1999).

On January 1, 2009, however, Congress passed the ADA Amendments Act of 2008 ("ADAAA"), rejecting *Toyota* and *Sutton*. Pub. L. No. 110-325, § 2(b)(1)-(6), 122 Stat. 3553 (2008). With the ADAAA, Congress explicitly lowered the standard for "substantially limits," noting that "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities." Pub. L. No. 110-325, § 2(a)(6), 122 Stat. at 3553. Congress declared that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations," and that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110-325, § 2(b)(5), 122 Stat. at 3554. Notably, the ADA, as amended, explicitly defines "major life activities" to include lifting. 42 U.S.C. § 12102(2)(A).

The post-ADAAA regulations promulgated by the EEOC similarly caution that the term "substantially limits": is "not meant to be a demanding standard"; shall be construed broadly in favor of expansive coverage, to the "maximum extent permitted by the ADA"; and shall "be applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(i),(iv). While noting that "not every impairment will constitute a disability within the meaning of [the ADA]," the regulations make clear that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R.

5

§ 1630.2(j)(ii).  Rather, the relevant inquiry is whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  *Id.*  While this inquiry "usually will not require scientific, medical, or statistical analysis," such evidence may be presented in order "to make such a comparison where appropriate."  29 C.F.R. § 1630.2(j)(v).

 "Few courts have had occasion to consider the effects of the ADAAA.  Those that have, apply it broadly to encompass disabilities that previously might have been excluded."  *Harty v. City of Sanford*, No. 11-cv-1041, 2012 WL 3243282, *5 (M.D. Fla. Aug. 8, 2012).  Of particular relevance here, in light of the new standards outlined in the ADAAA and its implementing regulations, courts have declined to dismiss, under Rule 12(b)(6), ADA claims for failure to allege facts that, if proven, would establish an impairment that "substantially limits" a major life activity. *See Lapier v. Prince George's County, Md.*, No. 10-CV-2851, 2012 WL 1552780, *7-8 (D. Md. Apr. 27, 2012) (holding that plaintiff's allegations of a blood disorder that caused decreased oxygen in his blood were sufficient to state a claim of a disability that substantially limited his major life activities); *Johnson v. Farmers Ins. Exch.*, No. CIV-11-963, 2012 WL 95387, *1 (W.D. Okla. Jan. 12, 2012) (holding that, under the broader definition of disability set forth in the ADAAA, Plaintiff's allegations that she suffered from sleep apnea were sufficient to state a claim that she had a disability that substantially limited a major life activity); *Coffman v. Robert J. Young Co., Inc.*, No. 3:10-1052, 2011 WL 2174465 (M.D. Tenn. June 1, 2011) (recommending that district court deny motion to dismiss, as plaintiff sufficiently pleaded that she was an individual with a disability within the meaning of the ADA where she alleged that she suffered serious injuries that required, after a six-month medical leave, lifting restrictions and limited motions affecting her ability to work), *report and recommendation adopted*, No. 3:10-1052, 2011 WL

2416745 (M.D. Tenn. June 14, 2011); *see also Farina v. Branford Board of Educ.*, No. 09-CV-49, 2010 WL 3829160, *11 (D. Conn. Sept. 23, 2010) (stating that, in light of the fact that the ADAAA lowered the threshold requirement to establish a disability, and specifically included lifting as a major life activity, "it is possible that even a relatively minor lifting restriction could qualify as a disability within the statute"), *aff'd*, 458 F. App'x 13 (2d Cir. 2011).

While acknowledging the broadened standards of the ADAAA, Defendants nonetheless argue that neither heavy lifting nor climbing utility poles is an activity that can be accomplished by "most people in the general population," and thus that Plaintiff's inability to perform these tasks, as a matter of law, does not constitute a "substantial limitation" on a major life activity. In support of this argument, Defendants point to Tenth Circuit cases finding that lifting restrictions even more stringent than the 60-pound lifting restriction at issue here did not substantially limit major life activities. *See Rakity v. Dillon Cos.*, 302 F.3d 1152 (10th Cir. 2002) (40-pound lifting restriction); *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237 (10th Cir. 2001) (same); *Huckans v. U.S.P.S.*, 201 F.3d 448, 1999 WL 1079619 (10th Cir. Nov. 30, 1999) (35-pound lifting restriction); *McCoy v. USF Dugan, Inc.*, 42 F. App'x 295, 2002 WL 1435908 (10th Cir. July 3, 2002) (25-pound lifting restriction). While admitting that these cases were all decided under pre-ADAAA standards, Defendants contend that they remain "valid guidance for this Court," as they were not decided based on the principles set forth in the *Toyota* and *Sutton* decisions specifically discussed and rejected by Congress in the ADAAA.

The Court does not read the ADAAA's repudiation of prior case law so narrowly. Indeed, in the ADAAA, Congress specifically noted that "*lower courts* have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities." Pub. L. No. 110-325, § 2(a)(6), 122 Stat. at 3553 (emphasis added). In response to

7

these lower court decisions, Congress passed the ADAA for the express purpose of lowering the threshold for the term, "substantially limits," and the EEOC has instructed that courts now apply that term to require a degree of functional limitation that is lower than the standard applied prior to the ADAAA.  The express language of the ADAA and its interpretative regulations thus call into question the continued precedential value of pre-amendment cases, such as those cited by Defendants, which well might have applied a higher degree of functional limitation than is now permissible under the statute to determine whether lifting restrictions are stringent enough to qualify an individual as disabled.

Moreover, none of the cases cited by Defendants involved a motion to dismiss an ADA claim based on the insufficiency of the factual allegations in a complaint; rather, each of those cases had reached the summary judgment stage, and the Court's decision therein, based on a fully developed factual record, addressed the sufficiency of the plaintiff's evidence of a disability.  *See Lusk*, 238 F.3d at 1241 ("agree[ing] with the district court that Plaintiff failed to produce sufficient evidence to establish (for the purpose of defeating summary judgment) that his lifting restriction is substantially limiting."); *Rakity*, 302 F.3d at 1159 ("The most favorable interpretation of Mr. Rakity's medical and employment records does not suggest he is substantially impaired in performing manual tasks.")*; Huckans*, 1999 WL 1079619, at * 3 n.4 ("Huckan's failure to present [evidence comparing his lifting restriction with the capabilities of an average person] reinforces the conclusion that his impairment is not substantially limiting.")*; McCoy*, 42 F. App'x at 298 (affirming summary judgment for employer where employee "ha[d] not shown that she was substantially limited in the major life activity of lifting").  In contrast, Plaintiff herein has not yet had an opportunity to present evidence of the limitations on his major life activities as compared to "most people in the general population."   Accordingly, even if the cases cited by Defendants

continue to have precedential value after the ADAAA as to what evidence is required in order to survive summary judgment, they provide little guidance to the Court in determining whether Plaintiff's allegations are sufficiently pled to survive the instant motion to dismiss.

Under the broadened standards of the ADAAA, the Court finds Plaintiff's allegations as to his disability sufficient to withstand the pleading requirements of Rule 12(b)(6). According to the Complaint, Plaintiff's condition renders him unable to climb utility poles or engage in heavy lifting. Post-surgery, his doctor limited him to work that did not involve lifting over sixty pounds or climbing utility poles. Moreover, Southwestern recommended that Plaintiff apply for long-term disability benefits. These allegations, read in the light most favorable to Plaintiff, are sufficient to raise an inference that Plaintiff was disabled at the time of his termination. Accordingly, the Court would be premature in dismissing Plaintiff's ADA claim at this stage of the litigation.

II.     NMHRA Claim

In interpreting the NMHRA, "the New Mexico Supreme Court has 'indicated that it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the act.'" *Latham v. Board of Educ. of Albuquerque Public Schs.*, No. 11-2217, 2012 WL 2855781, *5 (10th Cir. July 12, 2012) (quoting *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 338 (N.M. 2001)). "With the caveat that its 'reliance on the methodology developed in the federal courts . . . should not be interpreted as an indication that [it has] adopted federal law,' the *Trujillo* court noted that for the claim before it, 'the closest federal counterpart would be the [ADA].'" *Latham*, 2012 WL 28555781, at *5 (quoting *Trujillo*, 41 P.3d at 338).

Defendants argue that the NMHRA has not been amended to conform to the ADAAA, and that for this reason, the pre-amendment Tenth Circuit cases discussed above are controlling as to

Plaintiff's NMHRA claim.   Under those cases, Defendants' argument continues, Plaintiff's NMHRA claim fails to state a claim upon which relief can be granted, because Plaintiff's 60-pound lifting restriction is less stringent than the lifting restrictions found by the Tenth Circuit to be insufficient to constitute a substantial limitation on major life activities.

The Court finds it unnecessary to reach the issue of whether Plaintiff's NMHRA claim must be decided in accordance with pre-, rather than post-ADAAA federal case law.   As discussed above, none of the cases cited by Defendants involved a motion to dismiss based on the insufficiency of the factual allegations of a complaint; rather, each of those cases had reached the summary judgment stage, and the Court's decision therein, based on a fully developed factual record, addressed the sufficiency of the plaintiff's evidence of a disability.   Accordingly, those cases, while perhaps helpful in the context of a summary judgment motion, provide no authority for the Court to determine here that the allegations within the four corners of the Complaint are insufficient to state a plausible claim under the NMHRA.

According to the Complaint, Plaintiff's condition renders him unable to climb utility poles or engage in heavy lifting.   Post-surgery, his doctor limited him to work that did not involve lifting over sixty pounds or climbing utility poles.   Moreover, Southwestern recommended that Plaintiff apply for long-term disability benefits.   The Court finds these allegations, read in the light most favorable to Plaintiff, are sufficient to raise an inference that Plaintiff suffered from a physical handicap at the time of his termination.   Accordingly, the Court would be premature in dismissing Plaintiff's NMHRA claim at this stage of the litigation.

III.   Contract Claim

In Count III of the Complaint, Plaintiff alleges that by failing to reinstate him as a third-year apprentice in his new position, Defendants violated their "Standards of

Apprenticeship," a contract to which Plaintiff was a third-party beneficiary.  Plaintiff asserts a state law breach of contract claim against Defendants based on this alleged violation.  Defendants argue that Plaintiff's contract claim is preempted by the Labor Management Relations Act ("LMRA"), and thus must be dismissed.

Section 301 of the LMRA provides that suits "for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  The Supreme Court has interpreted this provision to mean that state law breach of contract claims, the resolution of which would require an interpretation of the terms of an agreement between an employer and a union, are preempted by the LMRA.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) ("[A] suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law.  A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law.").

Defendants contend that the Standards of Apprenticeship is an agreement entered into between Plaintiff's union and Southwestern and approved by the Department of Labor, and as such, falls within the scope of Section 301 of the LMRA.  Defendants further argue that, because resolution of Plaintiff's breach of contract claim would require this Court to define the meaning or scope of the terms and conditions set forth in the Standards of Apprenticeship, this claim is pre-empted by federal labor law.

Plaintiff does not dispute that the Standards of Apprenticeship is a contract between his union and his employer.  Rather, in his response to Defendants' motion, Plaintiff argues for the first time that the Standards of Apprenticeship is governed by the National Apprenticeship Act ("NAA") rather than the LMRA.  For this reason, Defendant contends, the LMRA provides no

11

basis for dismissal of his contract claim.   Plaintiff, however, did not state a claim under the NAA in his Complaint, and admits that he has not pursued any administrative remedies under the NAA. Moreover, even if Plaintiff is correct that his claim should have been brought under the NAA, this argument provides no basis for the Court to conclude that his breach of contract claim is proper. Indeed, his argument suggests to the contrary.

Plaintiff also appears to argue that his breach of contract claim is valid because contract damages are recoverable under the ADA.   This argument is unavailing.   The availability of a remedy in connection with liability on one count of the Complaint is irrelevant to the legal sufficiency of an entirely separate count of the Complaint.

Resolution of Plaintiff's breach of contract claim would require the Court to define the meaning or scope of the terms and conditions set forth in the Standards of Apprenticeship, an agreement between an employer and a union.   As such, Plaintiff's claim should have been brought under Section 301 of the LMRA.   Because Plaintiff instead brought a state law breach of contract claim, his claim is pre-empted, and must be dismissed.

## CONCLUSION

Plaintiff has agreed to dismissal of Xcel Energy as a defendant in this action.   The Complaint contains sufficient factual matter, accepted as true, to state a claim to relief under both the ADA and the NMHRA that is plausible on its face.   Plaintiff's breach of contract claim is preempted by the LMRA.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss First Amended Complaint [Doc. 6] is **GRANTED IN PART** and **DENIED IN PART**, as follows:   Xcel Energy Inc. is dismissed as a defendant in this action; Count III of the Complaint is dismissed; and Counts I and II of the Complaint remain viable against Southwestern.

DATED this 25th day of September, 2012.

_____
MARTHA VÁZQUEZ
United States District Court Judge